**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVANSTON INSURANCE COMPANY | CIVIL ACTION NO.: |
| *Plaintiff* | |
| v. | |
| TRISTAR PRODUCTS, INC. | |
| *Defendant* | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Evanston Insurance Company ("Evanston"), files this Complaint for Declaratory Judgment against its insured, Tristar Products, Inc. ("Tristar"), and in support thereof, states as follows:

## I.    INTRODUCTION

1.      Tristar manufactured, marketed, distributed, warranted and, in some cases, sold a set of pans referred to as Copper Chef Signature Cookware to consumers.  Three users of the cookware recently filed a putative class action in federal court in California ("Underlying Lawsuit") against Tristar seeking damages, including punitive damages, due to the cookware's defects.  See generally Underlying Complaint (Ex. A) at ¶¶ 1, 171, 183, and Prayer for Relief (EV00002; EV00041-EV00042; EV00044-EV00045).

2.      According to the Underlying Complaint, Tristar represented that the cookware would never scratch, peel, or chip and that nothing would ever stick to its surface.  See id. at ¶ 2 (EV00002).  According to Plaintiffs in the Underlying Lawsuit ("Underlying Plaintiffs"), the cookware lost its non-stick functionality shortly after purchase and was prone to scratching, peeling, and chipping.  See id. at ¶ 3 (EV00002).

3.     Underlying Plaintiffs further allege that Tristar actively concealed from consumers that the cookware was defective and unfit for its ordinary and intended purpose and that Tristar refused to honor the cookware's warranties.  See id. at ¶ 4 (EV000002).

4.     Evanston seeks a judicial declaration that Underlying Plaintiffs' allegations in the Underlying Lawsuit do not trigger a duty to defend or indemnify under the two excess policies (the "Evanston Policies") that Evanston issued to Tristar.

5.     Evanston also seeks a declaration that, because it has no duty to defend or indemnify Tristar, Evanston may withdraw the defense it has offered and has been providing to Tristar in the Underlying Lawsuit.  Evanston has provided that defense subject to reservations of its rights, including the right to withdraw from the defense.

## II.     PARTIES

6.     Tristar is a corporation that is incorporated in the State of Florida and maintains its corporate office in Coral Springs, Florida.   Tristar maintains its administrative office in Wyomissing, Pennsylvania.

7.     Evanston Insurance Company is a corporation that is incorporated in the State of Illinois and maintains its main office in Rosemont, Illinois.

## III.     JURISDICTION

8.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because the value of the Evanston Policies under which Tristar seeks coverage from Evanston exceeds $75,000, exclusive of interest and costs.

10.     This matter is between citizens of different states.

-2-

11.     Tristar is a citizen of the State of Florida.

12.     Evanston is a citizen of the State of Illinois.

13.     This Court also has jurisdiction of this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy.

14.     This matter presents a case of actual controversy because Tristar seeks a defense and indemnity, under the Evanston Policies that Evanston issued to Tristar, in connection with Underlying Plaintiffs' claims against Tristar in the Underlying Lawsuit.  Evanston disputes that it owes Tristar any duty to defend or indemnify it, under the Evanston Policies, for the claims alleged in the Underlying Lawsuit.

## III.     VENUE

15.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

16.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2) because Tristar maintains its administrative offices in Berks County, Pennsylvania and the Evanston Policies as well as the underlying policies were delivered to Tristar at its Berks County office.  The insurance producer who facilitated the procurement of insurance is located in Philadelphia County.  Philadelphia and Berks Counties both fall within the jurisdiction of the Eastern District of Pennsylvania.

## IV.     FACTUAL BACKGROUND

### A.     UNDERLYING LAWSUIT

17.     On March 3, 2020, Andy Partida, Patricia Gary, and Glenn Graeves, individually and on behalf of all others similarly situated, filed a putative class action lawsuit against Tristar. See Partida et al. v. Tristar Products, Inc., United States District Court for the Central District of California (Eastern Division), Civil No. 5:20-cv-00436.

-3-

18.     The Underlying Complaint alleges that Tristar manufactured, marketed, distributed, warranted and, in some cases, sold the Copper Chef Signature Cookware to the public. See generally Underlying Complaint (Ex. A) at ¶ 1 (EV00002).

19.     According to Underlying Plaintiffs, Tristar marketed its cookware as a "breakthrough" and a premium alternative to traditional pans. See id. at ¶ 2 (EV00002).

20.     Tristar claimed that the cookware used "Ceramic-Tech Non-Stick Technology" that would last a lifetime. See id. at ¶¶ 2, 47, 49 (EV00002; EV00010).

21.     Tristar further claimed, according to Underlying Plaintiffs, that the cookware would never scratch, peel, or chip. See id. at ¶¶ 2, 47 (EV00002; EV00010).

22.     Underlying Plaintiffs claim that shortly after consumers purchased the cookware, it would lose its non-stick attribute and would chip, scratch, and peel. See id. at ¶¶ 2, 50 (EV00002; EV00011).

23.     Named Plaintiff, Andy Partida from California alleged that he purchased a Copper Chef Grill Pan from QVC at the end of 2016 or the beginning of 2017 and that the pan began to deteriorate by the Spring of 2017. See id. at ¶¶ 7-13 (EV00003-EV00004).

24.     Named Plaintiff, Patricia Gary from New York, alleged that she purchased several Copper Chef Pans from QVC in September and October 2017. Her pans began to deteriorate "within days of purchase." See id. at ¶¶ 14-23 (EV00004-EV00005).

25.     Named Plaintiff, Glenn Graeves from Pennsylvania alleged that he purchased three sets of Copper Chef Pans through Amazon in November 2017. His pans also allegedly deteriorated "within days" of purchase. See id. at ¶¶ 24-32 (EV00005-EV00006).

26.     To demonstrate that the defects in the cookware were widespread, Underlying Plaintiffs quoted several online reviews in the Underlying Complaint. The earliest review from

February 2016 alleged that that the customer returned the Copper Chef Pans because the coating quickly failed:

> I received my Copper Chef pans with great excitement, which came crashing down after only three uses. The way they sell this pan online is all HYPE. After three uses, my eggs stuck so bad that my over easy eggs quickly became a mishmash of eggs. I wasn't trying to make scrambled eggs in the pan. I returned my entire order, and am now out over $60.00, due to having to send the pans back and losing out on the original shipping and handling charge. What a SCAM and COMPLETE disappointment. Do no buy these pans, unless you want to lose money. (Posted on February 23, 2016)

See id. at ¶ 51 (EV00014).

27.     The next review posted eight days later made a similar claim:

> Don't bother. Yes, we all hope to find a wonderful new, easy to use and clean pan. The infomercial makes it look awesome but they lie! Please don't waste your money. The food sticks a[n]d it isn't real copper, just color coated paint. If you want a great set, invest in the green pans or another well reviewed pan. Copper pan is junk. (Posted on March 3, 2016).

See id. at ¶ 51 (EV00014).

28.     A subsequent review alleged that the reviewer burnt her hand on the Copper Chef Pan: "**I would NEVER buy this junk again!!** 1 year ago[.] Worse skillet I've ever owned! Everything sticks! Burnt my hand on poorly designed handle! Avoid this do not purchase!!" See id. at ¶ 50 (EV00011-EV00014) (emphasis in original) (footnote omitted).

29.     The Underlying Complaint does not include any other reference to bodily injury. The Underlying Plaintiffs do not allege bodily injury, nor do they seek damages for bodily injury. See generally id. (EV00001-00045).

30.     Underlying Plaintiffs repeatedly alleged that Tristar intentionally concealed the cookware's defects. See id. at ¶¶ 4, 65, 76, 88, 99, 151-52, 154-56, 160-62, 177, 181, 186, 188-

89 (EV00002; EV00021-00024; EV00026; EV00029; EV00031-00032; EV00036; EV00038-00039; EV00039; EV00041; EV00042; EV00043; EV00043-00044).

31.     According to Underlying Plaintiffs, Tristar "profited and benefited" from the "intended and expected result of their [sic] conscious wrongdoing. . . ."  See id. at ¶ 103 (EV00032).

32.     Underlying Plaintiffs propose a nationwide class of purchasers of the Copper Chef Cookware.  See id. at ¶ 63 (EV00020-00021).

33.     Alternatively, Underlying Plaintiffs seek three statewide classes for purhasers in Pennsylvania, California, and New York.  See id. at ¶ 64 (EV00021).

34.     Underlying Plaintiffs' Complaint includes ten counts:

- •     Violation of the Magnum-Moss Warranty Act (Count I);
- •     Breach of Express Warranty (Count II);
- •     Breach of Implied Warranty of Merchantability (Count III);
- •     Unjust Enrichment (Count IV);
- •     Violation of the California Unfair Competition Law (Count V);
- •     Violation of the California Consumers Legal Remedies Act (Count VI);
- •     Violation of the California False Advertising Law (Count VII)
- •     Violation of § 349 of the New York General Business Law (Deceptive and Unfair Trade Practices Act) (Count VIII);
- •     Violation of §§ 349 and 350 of the New York General Business Law (Deceptive and Unfair Business Practices/False Advertising) (Count IX);
- •     Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count X).

35.     In their claims for breaches of express and implied warranty, Underlying Plaintiffs mention damage to other property:

> As a direct and proximate result of the breach of express warranties, Plaintiffs have suffered damages, injury [sic] in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

Id. at ¶ 89 (EV00029); see id. at ¶ 100 (implied warranty claim) (EV00032).

36.     Among other damages, Underlying Plaintiffs seek "all actual, general, incidental, statutory, punitive, and consequential damage to which Plaintiffs and Class members are entitled. . . ." See id. at Prayer for Relief (EV00044-00045).

### B.     INSURING AGREEMENTS

37.     Evanston insured Tristar under Commercial Excess Liability Policy No. MKLV1EUL100021, issued for the period June 1, 2016 to June 1, 2017.  See 2016-2017 Evanston Policy (Ex. B) (EV00046-00079).  The underlying policy is Commercial General Liability Policy No. G27603609 002 issued by Westchester Surplus Lines Insurance Company ("Westchester"). See Westchester Policy (Ex. C) (EV00080-00163).

38.     Evanston also insured Tristar under Commercial Excess Liability Policy No, MLKV1EUL10822 for the period June 1, 2017 to July 1, 2018.  See 2017-2018 Evanston Policy (Ex. D) (EV00164-EV00199).  The underlying policy is Commercial General Liability Policy No. PL1744407 issued by Great American E&S Insurance Company ("GAIC").  See GAIC Policy (Ex. E) (EV00200-00296).

39.     It has been represented to Evanston that the limits of the GAIC Policy are exhausted.  It has been represented to Evanston that the limits of the Westchester Policy are not exhausted.

40.     The Evanston Policies follow form to their respective underlying policies to the extent the provisions are not conflicting.

41.     The Insuring Agreement for Coverage A (Bodily Injury and Property Damage Liability) in the Westchester Policy states in relevant part:

> **1.**     Insuring Agreement
>
> > **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this

insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or 'property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result, but:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical payments under Coverage **C**.

No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

<u>See</u> Westchester Policy (Ex. C) at Form 00 01 04 13, p. 1 (EV00087).

42.     The Insuring Agreement for Coverage A (Bodily Injury and Property Damage Liability) in the GAIC Policy states in relevant part:

    **1.**    **Insuring Agreement**

        **a.**    We will pay those sums in excess of the "self-insured retention" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will also reimburse the insured for "defense and settlement cost" paid by the insured in excess of the "self-insured retention" provided such sums were incurred with our prior written consent. We will not pay damages or reimburse the insured for "defense and settlement costs" because of "bodily injury" or 'property damage" to which this insurance does not apply. The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE AND SELF- INSURED RETENTIONS.**

        **b.**    This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**    The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

            **(3)**    Prior to the policy period, no insured listed under Paragraph 1. of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any

24444742v.3

> continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

See GAIC Policy (Ex. E) at Form RMU 0001, p. 1 (EV00219).

43.     Coverage A of the underlying Westchester Policy and GAIC Policy applies to "bodily injury" and "property damage" caused by an "occurrence."  See Westchester Policy (Ex. C) at Form 00 01 04 13, p. 1 (EV00087); GAIC Policy (Ex. E) at Form RMU 00001, p. 1 (EV000219).

44.     Both policies define "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions."  See Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 15 (EV00101); GAIC Policy (Ex. E) at Form RMU 0001, p, 22 (EV00240).

45.     The Westchester Policy and GAIC Policy also exclude "bodily injury" and "property damage" that is "expected or intended from the standpoint of the insured."  See Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 2 (EV00088); GAIC Policy (Ex. E) at Form RMU 0001, p. 2 (EV00220).

46.     The Westchester and GAIC Policies include a "Damage to Your Product" exclusion.  That exclusion bars coverage for "'property damage' to 'your product' arising out of it or any part of it."  See Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 5 (EV00091); GAIC Policy (Ex. E) at RMU 0001, p. 6 (EV00224).

47.     Both Policies define "Your Product" as follows:

"Your product":

**a.**     Means:

-10-

      **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           **(a)**    You;

           **(b)**    Others trading under your name;

           **(c)**    A person or organization whose business or assets you have acquired; and

      **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.**    Includes:

      **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)**    The providing of or failure to provide warnings or instructions.

\* \* \*

See Westchester Policy (Ex. C) at Form 00 01 04 13, p. 16 (EV00102); GAIC Policy (Ex. E) at Form RMU 0001, p. 24 (EV00242).

48.    Each Evanston Policy contains an endorsement titled "Exclusion – Punitive Damages." The endorsement states in relevant part:

This policy does not apply to:

**Punitive or Exemplary Damages**

Punitive or exemplary damages. This exclusion applies regardless of any other provision of this policy.

If a "suit" is brought against any insured, seeking both compensatory damages and punitive or exemplary damages, no coverage will be provided by this policy for any costs, including defense costs, interest, fines, or penalties attributable to punitive or exemplary damages..

See Evanston Policies (Exs. B & D) at Form MAUB 1692 01 15 (EV00074; EV00191).

### C.      ADJUSTMENT OF THE CLAIM

49.     Tristar tendered the defense of the lawsuit to Evanston, and, upon information and belief, to Westchester.

50.     On March 17, 2020, Evanston notified Tristar that it was disclaiming coverage because the Underlying Complaint alleged damage to its own product, which was excluded under the "Damage to Your Product" Exclusion.  See March 17, 2020 Letter from Evanston (Ex. F) at p. 6 (EV00302).

51.     Evanston also reserved its rights because Underlying Plaintiffs alleged that:  (1) Tristar expected and intended the alleged damages; (2) Underlying Plaintiffs did not allege an occurrence; and (3) the Evanston Policies excluded coverage for punitive damages.

52.     On the same day, Tristar asked Evanston to reconsider its position because the Underlying Complaint purported alleged bodily injury and damage to property other than Tristar's cookware.  See March 17, 2020 Letter from Tristar (Ex. G) (EV00305-00306).

53.     On April 16, 2020, Evanston agreed to defend Tristar subject to a reservation of rights.  See April 16, 2020 Letter from Evanston (Ex. H) (EV00307-00313).

54.     That letter incorporated the prior reasoning and also explained that:  (1) the Underlying Complaint does not adequately allege any damage to other property; (2) the Underlying Complaint does not seek damages on account of "bodily injury"; and, (3) if the Underlying Complaint somehow alleges an occurrence, which Evanston denies, then only one occurrence occurred and it occurred prior to the effective date of the Evanston Policies.  See id. (EV00307-00313).

## COUNT I

### DECLARATORY JUDGMENT THAT EVANSTON HAS NO DUTY TO DEFEND OR INDEMNIFY TRISTAR BECAUSE THE UNDERLYING COMPLAINT DOES NOT ALLEGE AN OCCURRENCE

55.     Evanston incorporates the previous paragraphs of this Complaint as if they were set forth herein.

56.     Allegations made in the Underlying Complaint determine whether an insurer has a duty to defend and indemnify.

57.     Under Pennsylvania law, purchasers do not allege an insurable "occurrence" when they allege only damage to the defendant-insured's own product caused by faulty design or workmanship.

58.     Plaintiff's Underlying Complaint only provides factual allegations that support claims for damages to the cookware manufactured, marketed, distributed, warranted and, in some cases, sold by Tristar.  See generally Underlying Complaint (Ex. A) at ¶ 1 (EV00002).

59.     Since Underlying Plaintiffs allege only damage to Tristar's cookware, those allegations are insufficient to trigger coverage because it does not constitute an occurrence as defined in the Westchester and GAIC Policies and followed by the Evanston Policies.  See Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 15 (EV00101); GAIC Policy (Ex. E) at Form RMU 0001, p, 22 (EV00240).

60.     While the Underlying Complaint does incorporate an online review where some third party reviewer allegedly burnt his or her hand due to a poorly designed handle, even an indulgent reading of the Underlying Complaint fails to reveal a claim for damages based on a bodily injury unintended by Tristar.

61.     The named Underlying Plaintiffs do not allege any bodily injuries due to the use of Tristar's cookware.  <u>See</u> Underlying Complaint (Ex. A) at ¶¶ 7-32 (EV00003-00006).

62.     Also Underlying Plaintiffs neither allege that Tristar made any misrepresentations regarding the handle's design nor do they specifically plead that Tristar defectively designed or built the handle.  <u>See generally id.</u> (EV00001-00045).  Rather, Underlying Plaintiffs' allegations concern the cookware's coating.

63.     Further, Underlying Plaintiffs do not seek damages for bodily injury.  For example, in the paragraph suggesting that their proposed class meets the typicality requirement for class actions, Underlying Plaintiffs refer only to economic and monetary injuries, but make no mention of bodily injuries.  <u>See id.</u> at ¶ 65 (EV00021-00024).

64.     In no paragraph where Underlying Plaintiffs summarize their damages do they assert any damage caused by bodily injury.  <u>See generally id.</u> (EV00001-00045).

65.     Furthermore, Underlying Plaintiffs do not allege damage to other property that Tristar did not intend or expect.

66.     Twice in the Underlying Complaint, Underlying Plaintiffs make a conclusory allegation of damage to "other property."  <u>See id.</u> at ¶¶ 89 (EV00029), (breach of express warranty) 100 (EV00032) (breach of implied warranty).

67.     However, the Underlying Complaint contains absolutely no factual allegations that identifies what supposed "other property" was damaged or the type of damage that occurred.  <u>See generally id.</u> (EV00001-00045).

68.     Underlying Plaintiffs' allegations of damage to other property are too conclusory to trigger its duty to defend.

69.     For all these reasons, the Underlying Complaint fails to allege an insurable occurrence.

**WHEREFORE**, Plaintiff, Evanston Insurance Company, respectfully requests the Court:

a.      declare that there is no coverage for Tristar under the Evanston Policies because the allegations in the Underlying Complaint do not allege an occurrence as defined in the Westchester and GAIC Policies and incorporated into the Evanston Policies;

b.      declare that there is no coverage under the Evanston Policies for Tristar for the claims asserted in the Underlying Complaint;

c.      declare that Evanston has no duty to defend Tristar with respect to the Underlying Complaint;

d.      declare that Evanston may withdraw its defense of Tristar in the Underlying Lawsuit;

e.      declare that Evanston has no duty to indemnify Tristar with respect to the Underlying Lawsuit; and

f.      grant Evanston such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT II

**DECLARATORY JUDGMENT THAT EVANSTON HAS NO DUTY TO DEFEND OR INDEMNIFY TRISTAR FOR DAMAGE TO ITS PRODUCT**

70.     Evanston incorporates the previous paragraphs of this Complaint as if they were set forth herein.

71.     If this Court should find that Underlying Plaintiffs alleged an insurable occurrence that happened during the applicable policy periods of the Evanston Policies, coverage would still be excluded under the "Damage to Your Products" exclusions contained in both the Westchester

and GAIC Policies and followed by the Evanston Policies.  <u>See</u> Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 5 (EV00091); GAIC Policy (Ex. E) at RMU 00001, p. 6 (EV00224).

72.     Underlying Plaintiffs have not alleged any damage to anything other than the cookware manufactured, marketed, distributed, warranted and, in some cases, sold by Tristar.

73.     Therefore, if there was an insurable occurrence under the Evanston Policies, that occurrence is nonetheless excluded by the "Damage to Your Products" exclusion.

**WHEREFORE**, Plaintiff, Evanston Insurance Company, respectfully requests the Court:

a.     declare that there is no coverage for Tristar under the Evanston Policies because the Evanston Policies include an exclusion for "Damage to Your Product" and the Underlying Plaintiffs solely allege damages to products manufactured, marketed, distributed, warranted and, in some cases, sold by Tristar;

b.     declare that there is no coverage under the Evanston Policies for Tristar for the claims asserted in the Underlying Complaint;

c.     declare that Evanston has no duty to defend Tristar with respect to the Underlying Complaint;

d.     declare that Evanston may withdraw its defense of Tristar in the Underlying Lawsuit;

e.     declare that Evanston has no duty to indemnify Tristar with respect to the Underlying Lawsuit; and

f.     grant Evanston such other and further relief as may be necessary and appropriate under the circumstances.

24444742v.3

## COUNT III

**DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE FOR TRISTAR UNDER THE EVANSTON POLICIES BECAUSE THE UNDERLYING COMPLAINT ALLEGES THAT THE INJURIES WERE EXPECTED OR INTENDED**

74.     Evanston incorporates the previous paragraphs of this Complaint as if they were set forth herein.

75.     Underlying Plaintiffs allege in the Underlying Complaint that Tristar "profited and benefited" from the "intended and expected result of their [sic] conscious wrongdoing. . . ."  See Underlying Complaint (Ex. A) at ¶ 103 (EV00032).

76.     Underlying Plaintiffs repeatedly claimed that Tristar intentionally concealed their Pans' defects.  See id. at ¶¶ 4, 65, 76, 88, 99, 151-52, 154-56, 160-62, 177, 181, 186, 188-89 (EV00002; EV00021-00024; EV00026; EV00029; EV00031-00032; EV00036; EV00038-00039; EV00041-00044).

77.     Underlying Plaintiffs provided no allegations that the damage was unintended, unexpected, or unforeseeable by Tristar.  See generally id. (EV00001-00045).

78.     The Westchester Policy and GAIC Policy exclude "bodily injury" and "property damage" that is "expected or intended from the standpoint of the insured."  See Westchester Policy (Ex. C) at Form CG 00 01 04 13, p. 2 (EV00088); GAIC Policy (Ex. E) at Form RMU 0001, p. 2 (EV00220).

79.     Further still, the Westchester Policy and GAIC Policy only provide coverage for "bodily injury" and "property damage" caused by an "occurrence," which is defined as an "accident."  See Westchester Policy (Ex. C) at Form 00 01 04 13, pp. 1, 15 (EV00087, EV00101); GAIC Policy (Ex. E) at Form RMU 00001, pp. 1, 22 (EV000219, 240).

80.     Furthermore, as a matter of public policy, an insurer cannot indemnify its insured for intentional conduct because to do so would allow the insured to profit from its wrong.

81.     For those reasons, Tristar is not entitled to a defense or indemnification under the Evanston Policies.

**WHEREFORE**, Plaintiff, Evanston Insurance Company, respectfully requests the Court:

a.      declare that there is no coverage for Tristar under the Evanston Policies because Underlying Plaintiffs allege injuries that were expected and intended by Tristar and therefore are excluded under the Evanston Policies and uninsurable under Pennsylvania public policy.

b.      declare that there is no coverage under the Evanston Policies for Tristar for the claims asserted in the Underlying Complaint;

c.      declare that Evanston has no duty to defend Tristar with respect to the Underlying Complaint;

d.      declare that Evanston may withdraw its defense of Tristar in the Underlying Lawsuit;

e.      declare that Evanston has no duty to indemnify Tristar with respect to the Underlying Lawsuit; and

f.      grant Evanston such other and further relief as may be necessary and appropriate under the circumstances.

## **COUNT IV**

**DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE FOR TRISTAR UNDER THE EVANSTON POLICIES BECAUSE, IF THE UNDERLYING COMPLAINT ALLEGES AN OCCURRENCE, THEN IT IS A SINGLE OCCURRENCE THAT FALLS OUTSIDE THE POLICY PERIOD OF THE EVANSTON POLICIES**

82.     Evanston incorporates the previous paragraphs of this Complaint as if they were set forth herein.

83.     If the Court should find that Underlying Plaintiffs have somehow alleged facts that consitute an occurrence as defined in the Westchester and GAIC Policies and incorporated into the

-18-

Evanston Policies, there was only one occurrence and it occurred prior to the Policy Periods of the Evanston Policies.

84.     Under Pennsylvania law, coverage under a commercial general liability insurance is triggered when the damaging effects first manifest themselves in a way that would put a reasonable person on notice of injury.

85.     Therefore, an occurrence happens when injury becomes reasonably apparent, not at the time the cause of the injury occurs.

86.     Underlying Plaintiffs allege that as far back as February 2016, consumers were returning the cookware due to defects with its non-stick coating and posting reviews about the same.  See id. at ¶ 61 (EV00020).

87.     Furthermore, Underlying Plaintiffs allege that the cookware was first marketed in 2015 and that the cookware lost its non-stick functionality "shortly after purchase" and "almost immediately."  Id. at ¶¶ 3, 39, 50 (EV00002; EV00007; EV00011).

88.     Under the Underlying Complaint's allegations, the defects were reasonably apparent in February 2016 if not sooner.

89.     Evanston began insuring this risk in June 2016 after Tristar should have had reasonable notice of the defects and an occurrence, if any, was alleged.

90.     For that reason, if there was an occurrence that caused property damage it was a single occurrence that occurred prior to Evanston insuring the risk and Evanston has no obligation to cover loss caused by that damage.

91.     A similar analysis applies to an occurrence that caused a bodily injury.  While Underlying Plaintiffs did not allege a claim for bodily injury, if they did the occurrence happened after the effective date of the Evanston Policies.

24444742v.3

92.     The one mention of a bodily injury in the Underlying Complaint was included in an online review "posted 1 year ago."  See id. at ¶ 50 (EV00011).

93.     The Underlying Complaint was filed in March 2020.  Therefore, the first instance of bodily injury occurred in March 2019.

94.     The last effective date of the Evanston Policies was July 1, 2018, several months before the earliest possible occurrence.  See 2017-2018 Evanston Policy (Ex. D) (EV00199).

95.     For that reason, if there was an occurrence that caused bodily injury it was a single occurrence that occurred prior to Evanston insuring the risk and Evanston has no obligation to cover loss caused by that damage.

**WHEREFORE**, Plaintiff, Evanston Insurance Company, respectfully requests the Court:

a.      declare that there is no coverage for Tristar under the Evanston Policies because the occurrence that led to property damage was a single occurrence that happened prior to the effective date of the Evanston Policies;

b.      declare that there is no coverage for Tristar under the Evanston Policies because the occurrence that led to bodily injury was a single occurrence that happened after the effective date of the Evanston Policies;

c.      declare that there is no coverage under the Evanston Policies for Tristar for the claims asserted in the Underlying Complaint;

d.      declare that Evanston has no duty to defend Tristar with respect to the Underlying Complaint;

e.      declare that Evanston may withdraw its defense of Tristar in the Underlying Lawsuit;

f.      declare that Evanston has no duty to indemnify Tristar with respect to the

Underlying Lawsuit; and

g.      grant Evanston such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT V

## DECLARATORY JUDGMENT THAT EVANSTON HAS NO DUTY TO DEFEND OR INDEMNIFY TRISTAR FOR CLAIMS OF PUNITIVE DAMAGES

96.      Evanston incorporates the previous paragraphs of this Complaint as if they were set forth herein.

97.      Underlying Plaintiffs seek punitive damages in the Underlying Complaint.  See Underlying Complaint (Ex. A) at Prayer for Relief (EV00044-00045).

98.      The Evanston Policies include an exclusion that Evanston would provide "no coverage . . . for any costs, including defense costs, interest, fines, or penalties attributable to punitive or exemplary damages."  See Evanston Policies (Exs. B & D) at Form MAUB 1692 01 15 (EV00074; EV00191).

99.      Therefore, Evanston is entitled to a declaration that there is no coverage under the Evanston Policies for the relief or redress in any form for punitive damages.

**WHEREFORE,** Plaintiff, Evanston Insurance Company, respectfully requests the Court:

a.      declare, in the alternative to the relief requested in Counts I-IV, that Evanston's duty to defend and indemnify Tristar does not include requests for punitive damages – and that Evanston is not obligated to indemnify Tristar for any punitive damages sought or awarded in the Underlying Actions; and

b.      grant Evanston such other and further relief as may be necessary and appropriate under the circumstances.

24444742v.3

## DEMAND FOR TRIAL BY JURY

Plaintiff Evanston Insurance Company hereby demands a trial by jury of issues so triable.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

BY:   s/ Edward M. Koch
Edward M. Koch, Esquire  (ID No. 76337)
Marc L. Penchansky, Esquire  (ID No. 88934)
1650 Market Street, Suite 1800 Philadelphia,
PA 19103-7395
(215) 864.6319
(215) 864.6279
koche@whiteandwilliams.com
penchanskym@whiteandwilliams.com
*Attorney for Plaintiff,*
*Evanston Insurance Company*

Dated: April 16, 2020

-22-

24444742v.3