**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| HISCOX DEDICATED CORPORATE MEMBER | : | |
| LIMITED AS REPRESENTATIVE MEMBER | : | |
| OF SYNDICATE 33 AT LLOYD'S, | : | |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | No. 5:20-cv-01934 |
| WESTCHESTER SURPLUS LINES | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| TRISTAR PRODUCTS, INC., | : | |
| | : | |
| Defendant. | : | |

# **O P I N I O N**

**Westchester's Motion for Judgment on the Pleadings, ECF No. 33—GRANTED**
**Tristar's Cross-Motion for Judgment on the Pleadings, ECF No. 39—DENIED**

**Evanston's Motion for Judgment on the Pleadings, ECF No. 34—GRANTED**
**Tristar's Cross-Motion for Judgment on the Pleadings, ECF No. 38—DENIED**

**Hiscox's Motion for Judgment on the Pleadings, ECF No. 36—GRANTED**
**Tristar's Cross-Motion for Judgment on the Pleadings, ECF No. 40—DENIED**

**Joseph F. Leeson, Jr.**                                       **May 3, 2021**
**United States District Judge**

## I.     INTRODUCTION

This is a declaratory judgment action stemming from a dispute over three insurance

providers' alleged obligations to defend and indemnify their insured, Defendant Tristar Products,

Inc. ("Tristar"), in underlying litigation. Tristar has been sued in the U.S. District Court for the Central District of California for its marketing and manufacturing of allegedly defective cookware. All three insurance providers—Evanston Insurance Company, the original Plaintiff in this action ("Evanston"), as well as Intervenor-Plaintiffs Westchester Surplus Lines Insurance Company ("Westchester") and Hiscox Dedicated Corporate Member Limited as Representative Member of Syndicate 33 at Lloyd's ("Hiscox")—sold commercial liability insurance policies to Tristar. The providers now argue these policies do not obligate them to defend or indemnify Tristar in the Central District of California litigation. Tristar disagrees. Each party has filed cross-motions for judgment on the pleadings, with each party seeking a declaration from this Court as to their respective obligations and entitlements relative to the underlying litigation under the several insurance policies. For the reasons set forth below, the insurance providers' motions for judgment on the pleadings are granted, and Tristar's cross-motions for judgment on the pleadings are denied.

## II.     BACKGROUND

### A.     The Underlying Litigation

On or around March 3, 2020, three individual plaintiffs filed a putative class action[1] complaint against Tristar in the U.S. District Court for the Central District of California. *See generally* ECF No. 1 in *Partida, et al. v. Tristar Products, Inc.*, Case No. 5:20-cv-00436 (the "Underlying Complaint").[2] Tristar is a New Jersey Corporation and a lead manufacturer and

---

[1]     Plaintiffs seek to certify a nationwide class consisting of "all persons and entities in the United States who purchased Copper Chef Pans." Underlying Complaint ¶ 63. In the alterative, Plaintiffs propose three subclasses consisting of persons and entities that reside in California, New York, and Pennsylvania that purchased the cookware. *Id*. ¶ 64.

[2]     The Underlying Complaint is also attached as Exhibit A to Evanston's initial declaratory judgment Complaint in this action. *See* ECF No. 1-4.

marketer of "as seen on TV" products.  *See id.* ¶¶ 33-34.  Plaintiffs in the underlying action

allege that Tristar manufactured, marketed, and distributed a line of purportedly non-stick

cookware called "Copper Chef Signature Cookware."  *Id.* ¶¶ 1-2.  Plaintiffs aver that "[c]ontrary

to [Tristar's] representations . . . and as evidenced by an endless stream of consumer complaints,

Copper Chef Pans do not—and cannot—work as advertised."  *Id.* ¶ 3.  In particular, Plaintiffs

claim that "Copper Chef Pans [ ] lose their non-stick functionality shortly after purchase, and

scratch, chip and peel, leaving customers with an overpriced Pan to which everything sticks."[3]

*Id.*  Plaintiffs state that Tristar intentionally and knowingly misrepresented material facts and

actively deceived purchasers of Copper Chef Pans.  *See id.* ¶¶ 4, 154-157, 160-162, 177, 181.

According to Plaintiffs, a stream of negative product reviews and online criticism evidences the

fraudulent, deceptive, and unfair nature of Tristar's marketing representations as to the Copper

Chef Pans.[4] *See id.* ¶¶ 49-53.

Plaintiffs assert the following ten causes of action in the underlying litigation based on

the above-summarized factual allegations:  (1) violation of the Magnuson-Moss Warranty Act,

15 U.S.C. § 2301, *et seq*.; (2) breach of express warranty; (3) breach of implied warranty of

merchantability; (4) unjust enrichment; (5) violation of the California unfair competition law,

---

[3]     As is relevant to several arguments raised as to relevant policy periods, Plaintiff Andy
Partida, alleges he purchased a Copper Chef Grill Pan at the end of 2016 or the beginning of
2017 and that the pan began to deteriorate by the Spring of 2017, *see* Underlying Complaint ¶¶
7-13; Plaintiff Glenn Graeves alleges that he purchased three sets of Copper Chef Pans in
November 2017, with his pans deteriorating quickly thereafter, *see id.* ¶¶ 24-32; and Plaintiff
Patricia Gary alleges that she purchased Copper Chef Pans in September and October 2017, and
her pans also began to deteriorate quickly thereafter, *see id.* ¶¶ 14-23.
[4]     Plaintiffs also allege that "[a]s a direct and proximate result of the breaches of these
implied warranties, Plaintiffs have suffered damages, injuries in fact and ascertainable losses in
an amount to be determined at trial, including repair and replacement costs and damages to other
property."  *Id.* ¶ 100.  The reference to "other property" is relevant to several of the parties'
contentions.

Cal. Bus. & Prof. Code § 17200, *et seq*. (on behalf of the California class); (6) violation of the California consumers legal remedies law, Cal. Civ. Code § 1750, *et seq*. (on behalf of the California class); (7) violation of the California false advertising law, Cal. Bus. & Prof. Code § 17500, *et seq*. (on behalf of the California class); (8) violation of New York's false and deceptive business practices law, N.Y. Gen. Bus. Law § 349 (on behalf of the New York class); (9) violation of New York's false advertising law, N.Y. Gen. Bus. Law § 350 (on behalf of the New York class); and (10) violation of Pennsylvania's unfair trade practices and consumer protection law, 73 Pa. Cons. Stat. § 201-1, *et seq.* (on behalf of the Pennsylvania class).

  **B.**  **The Relevant Insurance Policies**

   *1.*  ***The Westchester Policies***

  Westchester issued to Tristar two commercial general liability insurance policies under policy numbers G237603609 001 and G27603609 002 with consecutive policy terms of June 1, 2015 to June 1, 2016 (the "2015-16 Westchester Policy") and June 1, 2016 to June 1, 2017 (the "2016-17 Westchester Policy") (collectively, the "Westchester Policies"). The 2015-16 Westchester Policy provides in relevant part as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**  **Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

\*  \*  \*

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" [and]

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period . . . .

ECF No. 27 at 8.[5] The 2015-16 Westchester Policy further provides as follows:

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**    **Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

*     *     *

    **b.**  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

ECF No. 27 at 13.

The 2016-17 Westchester Policy provides as follows:

**B.**    **Insuring Agreements**

Insuring Agreements 1. of Section I, Coverage A. Bodily Injury and Property Damage Liability and Coverage B Personal and Advertising Injury Liability, are deleted in their entirety and replaced by the following:

**1.**    **Insuring Agreement.**

    **a.**  We will pay those sums that are excess of the Self-Insured Retention stated in Item 5. of the Declarations that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. But:

---

[5]    These page numbers refer to the page numbers displayed on the CM/ECF "ribbon" at the top of each page of the document.

5<br>050321

*     *     *

**(2)**    We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" except as described in Part C – Defense and Settlement of this Endorsement.

**(3)**    We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply.

*     *     *

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

**(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" [and]

**(2)**    The "bodily injury" or "property damage" occurs during the policy period . . . .

ECF No. 27-1 at 67-68.

Both Westchester Policies state that "'[b]odily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." ECF No. 27 at 20; ECF No. 27-1 at 21. Both further provide that "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 27 at 22; ECF No. 27-1 at 23. Both Policies define "[p]roperty damage" as follows:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

ECF No. 27 at 22; ECF No. 27-1 at 23.

The Westchester Policies also contain numerous exclusions to coverage. With respect to bodily injury and property damage liability, the Policies provide as follows:

6
050321

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*        \*        \*

**k.     Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

ECF No. 27 at 9, 12; ECF No. 27-1 at 10, 13.  The Policies in turn define "your product" as

follows:

**a.     Means:**

**(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)**     You;

\*        \*        \*

**b.     Includes:**

**(1)**     Warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**     The providing of or failure to provide warnings or instructions.

ECF No. 27 at 23; ECF No. 27-1 at 24.  With respect to personal and advertising injury liability,

the Policies provide as follows:

**2.     Exclusions**

This insurance does not apply to:

\*        \*        \*

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**
"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### 2. *The Evanston Policies*

Evanston issued Tristar two commercial excess liability policies. Policy number MKLV1EUL100021 covered the period June 1, 2016 to June 1, 2017 (the "2016-17 Evanston Policy"), for which year the underlying policy was commercial general liability policy number G27603609 002 issued by Westchester. Policy number MKLV1EUL100822 covered the period June 1, 2017 to July 1, 2018 (the "2017-18 Evanston Policy") (collectively, the "Evanston Policies"), for which year the underlying policy was commercial general liability policy number PL1744407 issued by Great American E&S Insurance Company ("GAIC") (the "GAIC Policy").

The Evanston Policies follow the form of their respective underlying Policies—*i.e.*, the 2016-17 Westchester Policy and the GAIC Policy—to the extent there are not "any provisions to the contrary contained in [the Evanston Policies]." ECF No. 34-2 at 9; ECF No. 34-4 at 8. The terms of the underlying 2016-17 Westchester Policy and GAIC Policy are identical or practically so in respect to the relevant coverage provisions, definitions, and exclusions. *Compare* ECF Nos. 27, 27-1, and 34-5.

The Evanston Policies also contain an endorsement titled "Exclusion – Punitive Damages," which provides in relevant part as follows:

This policy does not apply to:

**Punitive or Exemplary Damages**

Punitive or exemplary damages. This exclusion applies regardless of any other provision of this policy.

If a "suit" is brought against any insured, seeking both compensatory damages and punitive or exemplary damages, no coverage will be provided by this policy for any

costs, including defense costs, interest, fines, or penalties attributable to punitive or exemplary damages.

ECF No. 34-2 at 30; ECF No. 34-4 at 29.

### 3. *The Hiscox Policies*

Hiscox underwrote two commercial general liability policies to Tristar. Policy number B0180PN1802957 covered the period July 1, 2018 to July 1, 2019 (the "2018-19 Hiscox Policy") and policy number B0180PN1902957 covered the period July 1, 2019 to July 1, 2020 (the "2019-20 Hiscox Policy") (collectively, the "Hiscox Policies"). The Hiscox Policies and the Westchester/GAIC Policies are in all material respects identical or practically so. *Compare* ECF Nos. 27, 27-1, 34-5, 29, and 29-1. However, unlike the Westchester, GAIC, and Evanston Policies, the Hiscox Policies contain a New York choice of law provision. *See* ECF No 29 at 4; ECF No. 29-1 at 4.

### C. <u>Relevant Procedural Background</u>

The underlying litigation in this matter was commenced in the U.S. District Court for the Central District of California on or around March 3, 2020. *See* Underlying Complaint. Shortly thereafter Tristar gave notice of the lawsuit to Westchester, Evanston, and Hiscox. Westchester agreed to participate in Tristar's defense in the underlying litigation, subject to a reservation of rights to withdraw its defense upon a determination that the Westchester Policies do not provide coverage for the claims asserted in the underlying litigation. *See* ECF No. 33-1 at 6. By letter dated March 17, 2020, Evanston notified Tristar that it was disclaiming coverage because the Underlying Complaint alleged damage to Tristar's own product; Evanston also reserved its rights for several other reasons. *See* ECF No. 34-6. Tristar subsequently asked Evanston to reconsider its position, *see* ECF No. 34-7, and on April 16, 2020, Evanston agreed to defend Tristar subject to a reservation of rights, *see* ECF No. 34-8. Hiscox similarly agreed to participate in Tristar's

defense—subject to a reservation of rights—and notified Tristar of its position by letter dated March 27, 2020. *See* ECF No. 29-2. The underlying lawsuit remains pending in the U.S. District Court for the Central District of California.

Evanston commenced the instant declaratory judgment action on or about April 16, 2020, with the filing of its five-count Complaint. *See* ECF No. 1. Specifically, Evanston's Complaint seeks declaratory judgment that (I) Evanston has no duty to defend or indemnify Tristar because the Underlying Complaint does not allege an "occurrence"; (II) Evanston has no duty to defend or indemnify Tristar for damage to its product; (III) Tristar is not entitled to coverage under the Evanston Policies because the Underlying Complaint alleges that the injuries were expected or intended; (IV) Tristar is not entitled to coverage under the Evanston Policies because if the Underlying Complaint alleges an "occurrence," it is a single occurrence that falls outside the policy periods; and (V) Evanston has no duty to defend or indemnify Tristar for punitive damages. *See id.* On June 12, 2020, Tristar filed its Answer and Counterclaim to Evanston's Complaint, in which Tristar asserts a single count of declaratory relief—*i.e.*, declaratory judgment that Evanston has a duty to participate in its defense in the underlying litigation. *See* ECF No. 7.

On July 31, 2020, Hiscox filed a motion to intervene in the instant action. *See* ECF No. 13. The motion, which was not opposed by Evanston or Tristar, was granted on August 12, 2020. *See* ECF Nos. 18-19. On the same day, the Court docketed Hiscox's Intervenor Complaint, which asserts four counts of declaratory relief: declaratory judgment (I) that Hiscox has no duty to defend or indemnify Tristar because the Underlying Complaint does not allege an "occurrence"; (II) that Hiscox has no duty to defend or indemnify Tristar because the Underlying Complaint alleges that the damage was expected or intended and not accidental; (III) that Hiscox

has no duty to defend or indemnify Tristar for damage to its own product; and (IV) that Hiscox has no duty to defend or indemnify Tristar for conduct outside the policy periods. *See* ECF No. 24. Tristar responded to Hiscox's Intervenor Complaint on August 31, 2020, with an Answer and Counterclaim, asserting a single count of declaratory relief—declaratory judgment that Hiscox has a duty to defend Tristar in the underlying litigation. *See* ECF No. 25.

Westchester filed its unopposed motion to intervene on August 20, 2020, *see* ECF No. 20, and the Court granted Westchester's motion on August 21, 2020, *see* ECF No. 22. The Court subsequently docketed Westchester's Intervenor Complaint, which asserts five counts of declaratory relief, counts which generally track the counts asserted in Evanston's Complaint.[6] *See* ECF No. 23. On September 10, 2020, Tristar filed its Answer and Counterclaim to Westchester's Intervenor Complaint, asserting a single count of declaratory relief for declaratory judgment that Westchester has a duty to defend Tristar in the underlying litigation. *See* ECF No. 26.

Between October 1 and November 16, 2020, the parties briefed the three motions for judgment on the pleadings filed by the insurance providers as well as Tristar's opposition and cross-motions for judgment on the pleadings as to each of the provider's Complaints. *See* ECF Nos. 33-43.

### D.     The Arguments of the Parties

Before addressing the legal principles applicable to the instant dispute or the merits of the parties' multiple arguments—many of which are related and/or coterminous—it is necessary to briefly review what arguments specifically each party is making.

---

[6]     This, with the exception that Count II of Westchester's Intervenor Complaint tracks Count III of Evanston's Complaint, and Count III of Westchester's Intervenor Complaint tracks Count II of Evanston's Complaint.

### 1. *Westchester's Arguments for Judgment on the Pleadings*

Westchester primarily argues that the Underlying Complaint does not allege an "occurrence" as that term is defined in the Westchester Policies—"an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—and as such, Westchester has no duty to defend or indemnify Tristar. *See* Westchester's Memorandum in Support of its Motion for Judgment on the Pleadings ("Westchester Mem."), ECF No. 33-1 at 9-10. According to Westchester, "Pennsylvania courts have consistently held that a complaint does not allege an 'occurrence' when it alleges only damage to the insured's own product," *id.* at 9 (citing *Kvaerner Metals v. Commercial Union Ins. Co.*, 908 A.2d 888, 889 (Pa. 2006)), and "[a]ll of the factual allegations contained within the Underlying Action allege damage to Tristar's own cookware," *id.* at 10. Similarly, Westchester contends that none of the factual allegations in the Underlying Complaint concern damage to "other property" (the limited reference to "damage to other property" being conclusory and notwithstanding); nor Westchester argues are there any substantive allegations concerning "bodily injury" (again, with the single reference to a purchaser's burnt hand being, according to Westchester, vague and conclusory). *Id.* Accordingly, "[b]ecause all of the damages sought by Claimants are limited to damage to Tristar's own product, caused by faulty design and/or workmanship, the Underlying Action does not allege an 'occurrence'" and there is no coverage under the Policies. *Id.* at 11.

Westchester further argues that the Underlying Complaint does not allege an "occurrence" under the Westchester Policies because "[t]he Underlying Action seeks damages on the basis that Claimants sustained injuries as a result of Tristar's intentional concealment of its products' defects." *Id.* Moreover, the Underlying Complaint alleges that "Tristar profited and benefited from the intended and expected result of their [sic] conscious wrongdoing." *Id.* at

12 (quotation marks omitted).  As such, the Underlying Complaint alleges what Westchester sees as exclusively intentional conduct, which cannot constitute an "occurrence" under the Policies. *See id*. at 11-12.

Similarly, Westchester contends that "[t]he Underlying Action alleges that Claimants sustained damages, all of which were intended and expected as a result of Tristar's conscious wrongdoing, including Tristar's intentional concealment of its products' defects." *Id*. at 12. Since "[t]he Westchester Policies exclude from coverage any 'bodily injury' or 'property damage' which is expected or intended from the standpoint of the insured," Westchester contends that there cannot be coverage for Tristar. *Id*.

Finally, Westchester argues that the "Damage to Your Product exclusion[,] which precludes coverage for 'property damage' to 'your product' arising out of it or any part of it," precludes coverage for Tristar. *Id*. at 12-13.  This is because, according to Westchester, "[a]ll of the property damage alleged in Underlying Action is damage to Tristar's product, caused by the products' lack of quality and performance." *Id*. at 13.  Moreover, according to Westchester, "[n]one of the Claimants allege that Tristar's cookware caused damage to any other property" and "[t]he conclusory allegations of damage to other property contained in paragraphs 89 and 100 of the Underlying Action, which fail to identify what 'other property' was damaged or the type of damage that allegedly occurred, are insufficient to trigger Westchester's duty to defend." *Id*. at 13.  Similarly, the Underlying Complaint's claims for breach of express and implied warranties are, Westchester argues, "clearly excluded by the Damage To Your Products exclusion."[7] *Id*. at 14.

---

[7]      Westchester also argues that because there is no duty to defend, there is necessarily no duty to indemnify Tristar.  *See id*. at 14.

## 2. *Evanston's Arguments for Judgment on the Pleadings*[8]

As with Westchester, Evanston leads off by arguing that the Underlying Complaint fails to allege an "occurrence" as that term is defined in the Westchester and GAIC (the underlying) Policies. According to Evanston, there has not been an "occurrence" here because "the Underlying Action alleges that Tristar knowingly manufactured a shoddy and defective product, which did not do what Tristar said it would do." Evanston's Memorandum in Support of its Motion for Judgment on the Pleadings ("Evanston Mem."), ECF No. 34 at 20. Specifically, the underlying Policies define "occurrence" as, above all else, an "accident." Thus, according to Evanston, under Pennsylvania law "it is largely within the insured's control whether it supplies the agreed upon product, and the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident" and cannot be considered an "occurrence." *Id*. at 19 (quoting *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc*., 562 F.3d 591, 596 (3d Cir. 2009)).

Evanston next argues that the Underlying Complaint does not allege any facts supporting unintended damage to other property in any plausible manner; nor does the Underlying Complaint allege that any of the Plaintiffs (as opposed to someone who posted an online review of Tristar's cookware) suffered bodily injury. *See id*. at 20-21. Therefore, according to Evanston, there can be no coverage under the underlying Policies.

Evanston also argues that even if the Court finds there is an insurable occurrence, there can be no coverage for Tristar and thus no duty to defend or indemnify because (1) the sole cause of the underlying alleged injuries was the manufacture and distribution of the defective

---

[8] The majority of Evanston's arguments overlap with those of Westchester. As such, the Court only highlights where Evanston's and Westchester's arguments differ.

cookware, (2) according to the allegations in the Underlying Complaint damage to the cookware manifested before Evanston insured Tristar, and (3) the sole claim of bodily injury occurred in March 2019, months after Evanston stopped insuring Tristar. *See id.* at 23-27.

Finally, Evanston contends that the Evanston Policies clearly exclude coverage for punitive damages, and it is therefore "entitled to a declaration that there is no coverage under the Evanston Policies for the relief or redress in any form for punitive damages."[9] *Id.* at 2.

### 3. *Hiscox's Arguments for Judgment on the Pleadings*

Hiscox raises similar arguments to Westchester and Evanston as to why it has no duty to defend or indemnify Tristar; however, its arguments are based on New York law, which both Hiscox and Tristar agree governs the Hiscox Policies.

Initially, like Westchester and Evanston, Hiscox argues that the Underlying Complaint does not allege an "occurrence," and therefore there is no coverage under the Hiscox Policies. Hiscox states that under New York law, the definition of "occurrence" "includes a 'happening' or 'event' as well as an 'accident.'" Hiscox's Memorandum in Support of its Motion for Judgment on the Pleadings ("Hiscox Mem."), ECF No. 36 at 12. According to Hiscox, "the addition of 'happening' or 'event' to the definition of 'occurrence' does not change the fact that fortuity is still an essential consideration under New York law when determining whether there is coverage under such a policy, and 'a claim for faulty workmanship simply does not involve fortuity.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Const.* Co., 119 A.D.3d 103, 108 (N.Y. App. Div. 2014)). Hiscox contends that in the underlying litigation, "it is not alleged that that the damage was the result of a chance 'occurrence' - an unknown or remote

---

[9]     Evanston's other arguments—regarding the damage to your product exclusion and the expected or intended injury/damage exclusion—largely track Westchester's.

cause, or an unexpected external force - as required under New York law"; rather, "the alleged damage to the Cookware itself is the result of a design or manufacturing defect and/or faulty workmanship, which does not constitute an 'occurrence' pursuant to the Hiscox Policies under basic principles of New York law." *Id*. at 15.

Hiscox next argues, similar to Westchester and Evanston, that it has no duty to defend or indemnify Tristar because Tristar "fails to identify what 'other property' was damaged, or the type of damage that allegedly occurred," and "Tristar also fails to mention that the alleged 'bodily injury' was part of online review by a third-party who allegedly burnt his/her hand due to a poorly designed handle." *Id*. According to Hiscox, there is no coverage and therefore no duty because "there is no specific injury to third-persons or damage to third-party property for which recovery is being sought from Tristar." *Id*. at 16.

Hiscox's remaining arguments—that there is no coverage and no duty because the damage alleged in the underlying litigation occurred outside the relevant policy periods, *id*. at 17-18, and that "[e]ven if Tristar can meet its burden to prove coverage under the insuring agreement of the Hiscox policies, the Damage to Your Product exclusion bars coverage for the claims asserted in the Underlying Action, *id*. at 19—are similar to arguments raised by Westchester and Evanston.

### 4. *Tristar's Arguments in Opposition and for Judgment on the Pleadings*

#### i. **Tristar's arguments with respect to Westchester and Evanston**

Tristar's arguments in support of its cross-motions with respect to Westchester and Evanston are largely similar. *Compare* Tristar's Memorandum in Opposition to Westchester's Motion for Judgment on the Pleadings, ("Tristar Mem. 1"), ECF No. 39-1, *with* Tristar's Memorandum in Opposition to Evanston's Motion for Judgment on the Pleadings ("Tristar

Mem. 2"), ECF No. 38-1. In both, Tristar argues that "[t]his is not a case about faulty workmanship that caused damage to the insured's own products, and there was no contractually-agreed standard governing the cookware. This is a case about an *off-the-shelf product that purportedly caused damage to 'other property.'*" Tristar Mem. 1 at 8; Tristar Mem. 2 at 8 (emphasis in original); *see* Tristar Mem. 1 at 11-20; Tristar Mem. 2 at 12-20. According to Tristar, Westchester and Evanston "ignore[ ] an entire line of cases that distinguishes between faulty workmanship cases and 'bad product' cases. This line of cases holds that, where a defective product causes damage to 'other property,' the claims constitute a covered 'occurrence' triggering the duty to defend." Tristar Mem. 1 at 8; Tristar Mem. 2 at 8; *see* Tristar Mem. 1 at 11-20; Tristar Mem. 2 at 12-20. Therefore, "[b]ecause the Underlying Lawsuit is plainly based on an allegedly defective off-the-shelf product that caused damage to 'other property,'" as opposed to a claim of faulty workmanship causing damage to Tristar's own product, "there is a covered occurrence, and [Westchester and Evanston] must defend the entire lawsuit." Tristar Mem. 1 at 8; Tristar Mem. 2 at 8. In support of this argument, Tristar points to what it identifies as the "clear and unambiguous" language in the Underlying Complaint at paragraph 100 alleging damage to "other property." Tristar Mem. 1 at 21; Tristar Mem. 2 at 22. This allegation, when construed liberally and in favor of Tristar as the insured is, according to Tristar, sufficient to invoke coverage. *See* Tristar Mem. 1 at 21; Tristar Mem. 2 at 22.

Next, Tristar argues that the "expected or intended acts" exclusion does not act to bar coverage under either the Westchester or Evanston Policies because "nowhere in the Underlying Complaint do the Plaintiffs allege that Tristar intended to cause damage to 'other property.'"[10]

---

[10] In its Evanston Memorandum, Tristar points Evanston's concession that there is no allegation of intentional conduct on Tristar's part. *See* Tristar Mem. 2 at 23.

Tristar Mem. 1 at 22; Tristar Mem. 2 at 23.  According to Tristar, "although the Underlying

Complaint alleges some intentional conduct, it also alleges multiple times that Tristar 'knew or

should have known' that its product was defective, which sounds in negligence," and

"[c]ertainly, the Underling Complaint is not specific enough to make clear that coverage is

excluded because the damage to other property was expected or intended by Tristar."  Tristar

Mem. 1 at 23; Tristar Mem. 2 at 24.

Finally, in its Memorandum with respect to Evanston, Tristar argues that while Evanston

does not dispute that the claims of the named Plaintiffs fall within Evanston's coverage period,

"Evanston attempts to avoid coverage . . . by arguing that the named Plaintiffs in the Underlying

Lawsuit identify several unverified on-line reviews of Tristar's products complaining about

similar product defects that occurred prior to the effective date of the Evanston Policies."  Tristar

Mem. 2 at 24.  According to Tristar, there is no support for this position.  Rather, Tristar argues

that putative class members' claims, not just the named Plaintiffs' claims, can be considered in

deciding whether their potential claims trigger a duty to defend.  *See id*. at 25.

### ii.     Tristar's arguments with respect to Hiscox

In opposition to Hiscox's motion, and in support of its own cross-motion, Tristar states

that under New York law, a commercial general liability insurance policy "does not insure

against faulty workmanship in the work product itself but rather faulty workmanship in the work

product which creates a legal liability by causing bodily injury or property damage to something

other than the work product."  Tristar's Memorandum in Opposition to Hiscox's Motion for

Judgment on the Pleadings ("Tristar Mem. 3"), ECF No. 40-1 at 8 (citation omitted).

"Moreover, under New York law, a breach of contract or warranty can be an 'occurrence' if, as a

result of the breach, products sold by the insured to a third party cause damage to other

property." *Id*. at 8-9.  Tristar argues that it is entitled to a defense by Hiscox because "[t]he Complaint in the Underlying Lawsuit plainly alleges that Tristar's allegedly defective product caused damage to 'other property.'"  *Id*. at 10.  According to Tristar, Hiscox's arguments that the underlying allegations are "conclusory" and do not identify what "other property" was damaged necessarily fail, because "New York law makes clear that '[i]f the complaint is so vague and indefinite that one cannot conclusively rule out coverage, then the [insurer] has the responsibility under the policy to defend the insured . . . at least up to the point where it becomes patently obvious from the clarified pleadings that the cause of action pleaded was not covered by the policy.'"  *Id*. at 11-12 (quoting *Scottsdale Ins. Co. v. United Indus. & Constr. Corp*., 137 F. Supp. 3d 167, 178 (E.D. N.Y. 2015)).

Additionally, in response to Hiscox's argument that none of the named Plaintiffs' claims in the underlying litigation occurred within the relevant policy coverage periods, Tristar contends that Hiscox "ignores the fact that the Underlying Lawsuit involves a putative class action that has not yet been certified and that is not limited by time and/or the three named plaintiffs' claims." *Id*. at 12.  According to Tristar, because "the proposed class is not limited in time and potentially includes claims that occurred during the Hiscox Policies' effective dates," Hiscox cannot disclaim coverage on this basis.[11]  *Id*. at 13.

## III.   LEGAL FRAMEWORK

### A.   Legal Standard:  Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c)

---

[11]   Notably, Tristar fails to address in each of its memoranda the arguments raised by the insurance providers that it is not entitled to coverage due to the "damage to your product" exclusions.

motion for judgment on the pleadings may be granted only when "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005). "When considering a motion for judgment on the pleadings, a court 'must accept as true all facts presented in the complaint and answer and draw all inferences in favor of the non-moving party[.]'" *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020) (quoting *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019)).

As with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the scope of what a court may consider in resolving a Rule 12(c) motion for judgment on the pleadings is necessarily constrained: a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *United States v. Gertsman*, No. 15 8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)); *see Leithbridge Co..*, 464 F. Supp. 3d at 738. A court may also take judicial notice of certain undisputed facts. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

### B.　　Legal Principles:  Duty to Defend and Indemnify[12]

"Under Pennsylvania law, an insurer has a duty to defend the insured if the complaint in

the underlying action against the insured potentially comes within the policy's coverage."

*Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 356 (E.D. Pa. 2017).

"[T]he question of whether a claim against an insured is potentially covered is answered by

comparing the four corners of the insurance contract to the four corners of the complaint."

*Unitrin Direct Ins. Co. v. Esposito*, 280 F. Supp. 3d 666, 670 (E.D. Pa. 2017) (quoting *Am. &*

*Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).  A court must accept the

factual allegations of the underlying complaint against the insured as true and liberally construe

them in favor of the insured.[13]  *Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak Corp.*, 130

F. Supp. 3d 973, 980 (E.D. Pa. 2015).  "If, after conducting this analysis, [a court] conclude[s]

even 'a single claim in [a] multiclaim lawsuit is potentially covered, the insurer must defend all

claims until there is no possibility that the underlying plaintiff could recover on a covered

claim.'"  *State Farm Fire & Cas. Co. v. Motta*, 356 F. Supp. 3d 457, 462 (E.D. Pa. 2018)

---

[12]　　The parties do not dispute that Pennsylvania law governs the duties and rights under the Westchester and Evanston Policies.   The law which governs the Hiscox Policies—New York law, which is also not in dispute, *see* Tristar Mem. 3 at 2 n.1—does not materially differ from Pennsylvania law with respect to the principles governing an insurer's duty to defend and indemnify.  *See, e.g.*, *Spandex House, Inc. v. Hartford Fire Ins. Co.*, 407 F. Supp. 3d 242, 249-250 (S.D.N.Y. 2019), *aff'd*, 816 F. App'x 611 (2d Cir. 2020).

[13]　　"When [insurance] policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language."  *Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*, No. 2:20-CV-03342, 2020 WL 7024287, at *2 (E.D. Pa. Nov. 30, 2020) (citing *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).  "When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).  A policy's language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Id*. (quoting *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

(quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)); *see*

*Quality Stone Veneer, Inc.*, 229 F. Supp. 3d at 356-57 ("If there is any possibility that coverage

has been triggered, the insurer has a duty to defend until it becomes clear that there is no

possibility the insurer owes the insured a defense.").

Importantly, "[t]he duty to defend is distinct from and broader than the duty to

indemnify." *Quality Stone Veneer, Inc.*, 229 F. Supp. 3d at 356 (citing *Ramara, Inc. v. Westfield

Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016)). "Because an insurer's duty to defend its insured in a

lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to

indemnify an insured for a judgment in an action for which it was not required to provide

defense." *Ramara*, 814 F.3d at 673.

## C.    Legal Principles:  "Occurrence" Defined

The Policies at issue define an "occurrence" as, above all else, an "accident."  Courts

applying Pennsylvania law[14] to resolve disputes over whether an "occurrence" with this

definition has been alleged in an underlying lawsuit, thereby entitling an insured to a defense

under a commercial general liability insurance policy, have largely distinguished two types of

cases:  one in which an underlying suit alleges an insured's "faulty workmanship," and one in

which an underlying suit alleges an insured's product "actively malfunctioned." *Quality Stone

Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 359 (E.D. Pa. 2017).  "In the latter

circumstance, courts have concluded that there is a duty to defend based on the fortuity involved

---

[14]    As relevant to the parties' arguments with respect to the Hiscox Policies, New York law
largely tracks the relevant principles under Pennsylvania law. *See Nat'l Union Fire Ins. Co. of
Pittsburgh, PA v. Turner Const. Co.*, 986 N.Y.S.2d 74, 77 (2014) ("There is no 'occurrence'
under a commercial general liability policy where faulty construction only damages the insured's
own work."); *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (2002)
("[T]he requirement of a fortuitous loss is a necessary element of insurance policies based on
either an 'accident' or 'occurrence.'").

in the active malfunction of a product." *Id.* By contrast, "courts have consistently held that claims based upon faulty workmanship do not amount to an 'occurrence' that triggers an insurer's duty to defend." *Id.* at 358-59 (collecting cases). "Faulty workmanship is not considered an 'occurrence' triggering an insurer's duty to defend because 'such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident."'"[15] *Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559, 564 (E.D. Pa. 2019) (*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 589 Pa. 317, 331 (2006)), *aff'd sub nom. Nautilus Ins. Co v. 200 Christian St. Partners LLC*, 819 F. App'x 87 (3d Cir. 2020).

To understand why an insured's "faulty workmanship" is, as a general matter, not fortuitous—fortuity being a chance occurrence, a necessary component of any "occurrence" defined as an "accident"—while an "active malfunction" of an insured's product is, it is helpful to examine what "faulty workmanship" means. An insured's "faulty workmanship" is usually characterized as the "improper performance of contractual obligations"—*i.e.*, an "insured's failure to deliver the product or perform the service it contracted to provide." *Pennsylvania Manufacturers Indem. Co. v. Pottstown Indus. Complex LP*, 215 A.3d 1010, 1015 (Pa. Super. 2019); *see*, *e.g.*, *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 256 (3d Cir. 2019) ("At bottom, the Marvin Complaint alleged faulty workmanship. The core of Marvin's suit was that '[s]ome of the organically coated extruded aluminum profiles purchased by Marvin from Sapa did not perform as intended, represented, and agreed."). Since "it is largely within the

---

[15]     "This is true whether the claims sound in contract law, for failure to abide by particular contractual standards, or tort law, for negligence in manufacturing a product." *Nautilus Ins. Co.*, 363 F. Supp. 3d at 564 (citing *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) and other cases).

insured's control whether it supplies the agreed-upon product, [ ] the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009). To hold otherwise and find coverage under a commercial general liability policy for faulty workmanship that resulted in a deficient product "would be to convert a policy for insurance into a performance bond."[16] *Kvaerner*, 589 Pa. at 336.

There are, however, two significant caveats to these principles. First, while liability stemming from an insured's failure to produce a product consistent with formal contractual obligations is necessarily foreseeable, and the insured's conduct does not constitute an "occurrence" as a result, the existence of a formal contract governing the underlying product or service is not required for the consequences of an insured's conduct to be considered foreseeable. *See 200 Christian St. Partners, LLC.*, 363 F. Supp. 3d at 567 ("Defendants argue that they did not have any bargained-for contractual standards to live up to and any defects contained in the homes were unforeseeable malfunctions. This argument fails because the focus of our inquiry is

---

[16]     The court in *Kvaerner* cited to a law review article explaining as follows:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441 (1971).

whether damages stemming from faulty workmanship are foreseeable; the presence of a contract with bargained-for standards contributes to foreseeability, but is not required." (citing *CPB Int'l, Inc.*, 562 F.3d at 596)).

Second, as the parenthetical quotation just referenced suggests, the consequences of "faulty workmanship" may, in limited circumstances, be sufficiently *un*foreseeable for allegations of faulty workmanship to constitute an "occurrence," where the faulty workmanship causes damage to property other than the insured's own product[17] and disconnected from what product or service it was agreed the insured would provide.[18] *See Pottstown Indus. Complex LP*, 215 A.3d at 1015 (explaining that relevant precedents "do not hold that the fact that liability is based on failure to properly perform contractual duties precludes the existence of an 'occurrence' where the claim is for damage to property not supplied by the insured and unrelated to what the insured contracted to provide."); *see also 200 Christian St. Partners, LLC.*, 363 F. Supp. 3d at 565. However, "any distinction between damage to the [insured's] work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship." *Sapa Extrusions, Inc.*, 939 F.3d at 256. Stated differently, where damage to third-party property is a foreseeable consequence of faulty workmanship, the existence of third-party property damage does not create an "occurrence." *See id.*

---

[17]     Where faulty workmanship does not constitute an "occurrence," it is because "the only property damaged is the product or property that the insured supplied or on which it worked." *Pottstown Indus. Complex LP*, 215 A.3d at 1015. In this circumstance, the consequences of delivering a deficient product are completely foreseeable.

[18]     *See Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282 (10th Cir. 2011) ("[M]ost federal circuit and state supreme court cases line up in favor of finding an occurrence in the circumstances we consider here. In fact, a strong recent trend in the case law interprets the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship." (collecting cases)).

## IV.    DISCUSSION

### A.    The Underlying Complaint Fails to Allege an "Occurrence"

As the parties observe, the threshold question in this case is whether the allegations in the Underlying Complaint constitute an "occurrence" as that term is defined in the several Policies. If there is no "occurrence," there can be no coverage.  The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Therefore, the Court must determine whether the Underlying Complaint seeks damages for an "accident"—here, the unforeseeable consequences of the "active malfunctioning" of the Copper Chef Pans—or the foreseeable consequences of Tristar's "faulty workmanship" in connection with the manufacturing, marketing, and distribution of the Copper Chef Pans—specifically, for property damage or bodily injury disconnected from the Copper Chef Pans themselves.

In the Court's view, even construing the factual allegations in the Underlying Complaint in Tristar's favor, that pleading does not assert liability for, or raise allegations in support of, tort liability for physical damage to property other than the allegedly deficient products Tristar manufactured and distributed.  Rather, the Underlying Complaint alleges that the Copper Chef Pans were "defective," "incapable of performing as advertised," and "of low quality and durability."  In this way, the Underlying Complaint is asserting that by the Pans' inability to retain their non-stick feature, and owing to Tristar's misleading marketing campaign to the contrary, the Copper Chef Pans were unsuited for their intended use and were not what the Plaintiffs and the putative class members bargained for when they purchased these products.

A brief review of the Underlying Complaint's key allegations reveals this:

- Copper Chef Pans do not—and cannot—work as advertised. Copper Chef Pans instead lose their non-stick functionality shortly after purchase, and scratch, chip and peel, leaving customers with an overpriced Pan to which everything sticks.  Underlying Complaint ¶ 3.

- Defendant knew, or should have known, that Copper Chef Pans are defective, unfit for their ordinary and intended purpose, and incapable of performing as warranted.  *Id*. ¶ 4.

- Prior to purchasing Copper Chef Pans, Plaintiff Gary viewed and relied upon the advertising claims made in Defendant's television infomercials and website, and on the Product's labels . . . .  *Id*. ¶ 17.

- [Defendant's] advertising claims guaranteed consumers that the Copper Chef Pans would not scratch or peel, and would be non-stick without the use of any oils.  *Id*. ¶ 17.

- The Copper Chef Pans' failure to function as advertised forced Plaintiff Gary to cease using her Pans.  *Id*. ¶ 18.

- But for Defendant's myriad misrepresentations and omissions, Plaintiff Gary would not have purchased Copper Chef Pans or would have requested a refund immediately after purchase.  *Id*. ¶ 23.

- Plaintiffs and Class members viewed and relied on Defendant's marketing materials and/or product labels prior to purchasing Copper Chef Pans, and believed Defendant's representations regarding the Products' performance properties to be true.  *Id*. ¶ 48.

- Contrary to Defendant's representations, however, Copper Chef Pans fail to conform to its various express warranties, including by failing to last a "lifetime" and providing a coating to which food sticks, because they eventually chip, peel and/or lose their non-stick functionality. Simply put, Copper Chef Pans are unsuited for their intended purpose and do not live up to Defendant's baseless marketing claims.  *Id*. ¶ 49.

- Defendant is aware of the many defects plaguing Copper Chef Pans.  *Id*. ¶ 53.

- Copper Chef's shortcomings are hardly surprising. Experts report Copper Chef is not, in fact, copper cookware. Instead, the Pans appear to be little more than "aluminum with copper colored Ceramic-Tech Non-Stick Coating. . . . So basically an induction friendly copper colored aluminum pan with a ceramic coating. Not a copper pan."  *Id*. ¶ 54.

- Defendant's warranty practices deprive Plaintiffs and Class members of the benefit of the parties' bargain.  *Id*. ¶ 58.

- In its capacity as a warrantor, Defendant's knowledge of the inherent defects in Copper Chef Pans renders its efforts to limit the duration of express and implied warranties in a manner that would exclude warranty coverage unconscionable . . . .  *Id*. ¶ 60.

These allegations make clear that Plaintiffs and the putative class members are alleging that Tristar delivered products that did not have the features—indeed, the primary feature, a sustainable non-stick quality—which they were advertised as having, and accordingly they were unsuited for their intended purpose.  The heart of this dispute is the allegation that the purchasers of the Copper Chef Pans did not receive what they considered to be the agreed-upon product— non-stick cookware that was able to maintain its non-stick quality.  They claim they did not receive what they had bargained for in purchasing the product.  It is therefore clear that the Underlying Complaint alleges Tristar's "faulty workmanship" in producing the pans rather than an "active malfunction" of the Copper Chef Pans.  *See, e.g.*, *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 256 (3d Cir. 2019) ("At bottom, the Marvin Complaint alleged faulty workmanship. The core of Marvin's suit was that '[s]ome of the organically coated extruded aluminum profiles purchased by Marvin from Sapa did not perform as intended, represented, and agreed.' For example, 'the surface finish of some of Marvin's windows and doors made with Sapa's organically coated extruded aluminum profiles has prematurely failed in coastal installations in the field at an abnormal rate.'"); *Burlington Ins. Co. v. Shelter Structures, Inc.*, 484 F. Supp. 3d 237, 244 (E.D. Pa. 2020) (finding, in a duty to defend suit, where the underlying action sought damages for a steel and fabric airship hanger that had collapsed, and specifically alleged that the hanger "failed in winds far below the design requirements of the applicable building code" and "the actual wind forces were less than half of what the [h]angar should have been constructed to resist," that "[b]ased solely on the underlying complaint, the failure of the hangar was the foreseeable result of the allegedly faulty workmanship, which is not an occurrence under Pennsylvania law").

Importantly, that the Underlying Complaint states that complaints over the quality of the Copper Chef Pans were widespread (and that Plaintiffs seek to certify a nationwide class accordingly) indicates that the deficient nature of the Pans was allegedly part and parcel of the Pans themselves and the consequence of their design and/or manufacture; it was not, as Tristar appears to argue, a fortuitous, unforeseeable consequence of some circumstance outside of Tristar's control. "Put simply, it was 'largely within [Tristar's] control whether it supplie[d] the agreed-upon product,' so any liability flowing from [Tristar's] failure to deliver a product that met the agreed specifications was 'too foreseeable to be considered an accident.'" *Sapa Extrusions, Inc.* 939 F.3d at 256 (quoting *CPB Int'l, Inc.*, 562 F.3d at 596).

Tristar also argues that the Underlying Complaint "unambiguously alleges that Tristar's allegedly defective product caused 'damages to other property.'" Tristar Mem. 1 and 2 at 20 and 21, respectively (quoting Underlying Complaint ¶ 100). According to Tristar, the allegation of "damages to other property" ends the analysis, entitling Tristar to coverage and a defense under Pennsylvania law. The Court disagrees. First, it is doubtful the fleeting reference to "damages to other property" in the Underlying Complaint, devoid of any particulars or context, is substantive enough to be plausible. However, even assuming it is, the fact that any consequences of Tristar's faulty workmanship—*i.e.*, delivering a product to customers which was clearly not consistent with the customers' expectations based on Tristar's advertising, and therefore not what they bargained for—were foreseeable is the dispositive factor. That foreseeable damage to third-party property is alleged does not alter the analysis. *See Sapa Extrusions, Inc.*, 939 F.3d at 256 ("Sapa protests this analysis, asserting that third-party property damage triggers coverage. But [*Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591 (3d Cir. 2009)] and [*Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223 (3d Cir. 2010)] both hold that any distinction

between damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship." (citing *CPB*, 562 F.3d at 597; *Specialty Surfaces*, 609 F.3d at 238-39)).

Tristar appears to further argue that "this is not a case about faulty workmanship," on the basis that there was not a formal contract between Tristar and the underlying Plaintiffs, and therefore there was no "contractually-agreed standard" governing the Copper Chef Pans. Tristar Mem. 1 at 12; Tristar Mem. 2 at 13. However, as with the presence of alleged damage to "other property," the absence of a formal contract here does not, under the circumstances, change the fundamental analysis. Even without a formal contract, Plaintiffs and putative class members purchased the Copper Chef Pans expecting certain features, features which the Pans allegedly did not possess. It is the alleged unsuitability of the Pans for their intended purpose, as defined by Tristar's representations regarding the Pans' qualities and features, rather than the presence or absence of a formal contract, which leads the Court to conclude that the Underlying Complaint is alleging "faulty workmanship" as opposed to an "active malfunction." *See Meridian Mut. Ins. Co. v. James Gilligan Builders*, No. CIV.A. 08-1995, 2009 WL 1704474, at *5 (E.D. Pa. June 18, 2009) (explaining, that where an insured argued that there was an "occurrence" because the insured "did not perform any work in this case pursuant to any agreement," that the insured "misses the point. Whether or not [the insured] had a written agreement . . . [it] performed pursuant to a mutual understanding . . . . It is the breach of that understanding to perform certain work . . . for consideration, whether written or oral, formal or informal, implied or express, as a principal or as an agent . . . rather than of some duty imposed by social policy that is at issue."); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 701 (E.D. Pa. 2012) ("As a primary matter, it is not the existence of the contract *per se* that causes the claims at issue to not

be 'occurrences,' but rather the fact that they all stem from faulty workmanship and allege damages solely to the work product of the insured. . . . Pennsylvania law explicitly declines to recognize this type of claim as accidental in nature, regardless of the framework in which it is cast.").  And already discussed at length, the consequences of Tristar's faulty workmanship were indeed foreseeable—with or without formal contractual standards.[19]  *See also 200 Christian St. Partners, LLC.*, 363 F. Supp. 3d at 567 ("Defendants argue that they did not have any bargained-for contractual standards to live up to and any defects contained in the homes were unforeseeable malfunctions. This argument fails because the focus of our inquiry is whether damages stemming from faulty workmanship are foreseeable; the presence of a contract with bargained-for standards contributes to foreseeability, but is not required." (citing *CPB Int'l, Inc.*, 562 F.3d at 596)).[20]

For all of the reasons discussed above, the Court concludes that the Underlying Complaint alleges faulty workmanship on Tristar's part which primarily—and likely, exclusively—concerns Tristar's own deficient products, the Copper Chef Pans.  Because the consequences of Tristar's faulty workmanship were foreseeable, the Underlying Complaint fails to allege an "accident," and consequently fails to allege a coverable "occurrence" under the

---

[19]     Indeed, taking the Underlying Complaint on its face, Tristar "knew, or should have known, about the defective Copper Chef Pans and their failure to perform as advertised," and Tristar was specifically "made aware of the defective Copper Chef Pans through consumer complaints."  Underlying Complaint ¶ 153.

[20]     The legal conclusions in this Section of the Opinion also hold with respect to the Hiscox Policies under New York law.  *See Amin Realty, L.L.C. v. Travelers Prop. Cas. Co.*, No. 05-CV-195, 2006 WL 1720401, at *3 (E.D.N.Y. June 20, 2006) ("The coverage [provided by a CGL policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." (applying New York law) (quoting *J.Z.G. Resources, Inc. v. King,* 987 F.2d 98, 103 (2d Cir. 1993))); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Const. Co.*, 986 N.Y.S.2d 74, 78 (2014) ("[A] claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident."); *see also Aquatectonics, Inc. v. Hartford Cas. Ins. Co.*, No. 10-CV-2935, 2012 WL 1020313, at *6 (E.D.N.Y. Mar. 26, 2012).

several Policies. Without a coverable "occurrence," there can be no duty on Westchester, Evanston, or Hiscox to participate in the defense of Tristar in the underlying lawsuit.

### B. Without a Duty to Defend Under the Policies, there is No Duty to Indemnify

"Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016). Here, because neither Westchester, Evanston, nor Hiscox have a duty to defend Tristar in the underlying action under their respective insurance policies, they similarly do not have a duty to indemnify Tristar under those Policies.

## V. CONCLUSION

For the reasons set forth above, Westchester, Evanston, and Hiscox are entitled to declaratory judgment that, as a matter of law, they owe no duty to defend or indemnify Tristar in the underlying lawsuit. Westchester's, Evanston's, and Hiscox's motions for judgment on the pleadings, *see* ECF Nos. 33, 34, 36, are therefore granted. Tristar's cross-motions for judgment on the pleadings, *see* ECF Nos. 38-40, are denied.

A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
